Tutwiler v. Kijakazi is our next case for argument. May it please the court, my name is Anne Young and I represent Heather Tutwiler. Ms. Young, could you raise your voice please? This is a big room and that microphone records but does not augment very much. My name is Anne Young. I represent Heather Tutwiler, the plaintiff appellant in this case. Ms. Tutwiler suffers from a number of physical ailments. Starting in 2014 she had endometrial cancer. After that she had an incisional hernia repaired that required her partial small bowel resection followed by her gallbladder removal. Since these procedures she has had continuous vomiting, nausea and diarrhea that affect her worse throughout the process of all of these different conditions. She testified that after her gallbladder removal she has not had a normal bowel movement since. The vocational expert testified at the administrative hearing that the tolerance for being off task in competitive employment was 10% and an employee could miss just one day of work a month to be able to still perform competitive employment. He also said if an individual is away from the workstation for any reason it would be problematic and that they could be reprimanded and or dismissed. He also said that, I'm sorry, the vocational expert also said that if you are actively puking while on the job you would be dismissed by your employer. The ALJ in this case did not that would be caused by Heather Tutwiler's conditions. When considering the evidence the ALJ ignored entire lines of contrary evidence and failed to build a logical bridge from the evidence to the conclusion. Looking to the medical record, Ms. Young, how many times a week does it does the record show that she was having these issues? You use the word continuous. She testified that she vomits two to three times a day. Throughout the record there's various at the beginning from 2017 to 2018 it's a couple times a week and then by the end of the record her physician Dr. Wu did state that she has I believe it was it was regular vomiting and regular diarrhea that affected her daily life. Was she still being treated? Yes. For the vomiting and the nausea? Yes she was still being treated and her physician said that her the medication that she was on for the nausea she was likely to develop a tolerance to so that it would be less effective as as her conditions progressed. And does the record show the medical record that she went months without throwing up in essence that she was improving? I don't believe it shows no not to my recollection. A lot of what the ALJ was citing too was from 2017 and 2018 which is prior to the period. The period started in August of 2018 and that is when she had her hernia repair done. Well in 2018 is when she had her hernia repair and then she had her gold bladder removed in 2019 and she said that her her symptoms got worse from there. The main part that I want to point out is that in August of 2020 Dr. Wu did an EGD which is an esophagastrodontoscopy and it found that there was severe bowel dysmotility in that she had severe bowel dysmotility and this is something that the ALJ never discussed and something that the agency consultants never never saw. So they never saw it when they gave their opinion to the ALJ and the ALJ never considered it in the ALJ's opinion. The ALJ did discuss a 2020 manometry procedure which said that it was suggestive of intrinsic neuropathy but that clinical correlation was needed and the ALJ focused on the fact that clinical correlation was needed for that procedure to to confirm the intrinsic neuropathy but then the ALJ never discussed the later one the August EGD which did find severe bowel dysmotility. Would it have been possible for her to hold down any of these jobs proposed by the vocational expert based on Dr. Wu's diagnosis? So no. She works a part-time well she did up until two weeks prior to the hearing she worked a part-time position and she was let go from that part-time position because of her her active vomiting on she was sent home multiple times because of the active vomiting and then the employer let her go and they because of this and they wrote a letter that said I was trying to find the exact verbiage but oh it says please bear in mind that we believe it is likely that your failure to appear for work is due to your serious medical medical condition to that end we are making you eligible for rehire should you wish to return so they let her go because she was vomiting regularly on the job and was unable to perform her duties while she was having severe diarrhea and vomiting and she and she also testified to that that her employer was aware of her situation and that she was regularly sent home because of it she has she also testified that she has consistent accidents due to the diarrhea that she suffers from so looking at the evidence the ALJ failed to consider this this EGD by Dr. Wu and then disregarded the earlier February 2020 manometry because because the notes in that test stated that clinical correlation was needed for it so the ALJ also failed to consider her significant weight loss throughout this whole process she lost over 100 pounds during all of this and she's still her current doctor says that she's unable to gain weight Dr. Wu said that and were these subjective you know evaluating her subjective symptoms was any of this raised below yes her her symptoms and you mean at the district court level the argument yes yes it was raised that it was raised that the ALJ failed to consider the time off task and the absences that would be required due to all of her conditions yes so she did lose over a hundred pounds from 27 through 2017 and 2018 and she was also diagnosed with acute kidney injury likely which they said was likely due to dehydration the ALJ the AL actually can I save the rest of my time for rebuttal unless you have further questions it's up to you okay thank you thank you counsel Miss Siegel good morning your honors my name is Catherine Siegel I represent the commissioner of social security in this case the main issue before this court is that the claimant argues she would need excessive work breaks in absences due to her gastrointestinal symptoms I would like to clarify that the onset date was amended at the hearing to January of 2018 so her criticism of the administrative law judge referring to evidence from 2018 is not well taken the claimant has failed to establish that she had work limits beyond those that the ALJ assessed first of all the record shows that her symptoms were intermittent not all the time as she testified and that is supported by the medical records in particular from her gastroenterologist both Dr. Akbar and Dr. Wu. Dr. Wu in August of 2020 which is a record that the claimant is citing as a support for having the symptoms all the time actually cites intermittent symptoms on both page 1792 and 1793 which is where that report occurs in the record. Dr. Wu's report does not establish any restrictions based on her symptoms he did not give any kind of assessment did not make any statements in the in that report that suggested she had any limitations and in fact uses the word intermittent to describe her diarrhea and said that it was for many years but that she recently had improvement over the past couple of months that's at 1792 with regard to the bowel dysmotility that condition was being treated by with Cipro which is an antibiotic and although the claimant said that it was not effective the Dr. Wu her gastroenterologist said that she should continue using that medication and that she should use it for 10 days every three months so it was a continuing type of preventative medication that she was using to treat that condition. He prescribed two additional medications on 1793 as well that also addressed vomiting so he was still treating the intermittent vomiting. Yes and from what the doctor said that those were those were effective treatments and that he characterized her condition as intermittent so not constant as she testified. Importantly in that same report from August 2020 Dr. Wu stated that the claimant is doing okay and that her but she had intermittent abdominal distension and amnesia persists and he recommended continuing the same treatment. With the intermittent that Dr. Wu found did the ALJ make a determination? The ALJ did not cite that specific record in his decision but he was not required to do so because with regard to articulation and not citing the evidence did he make a determination of how often the intensity or the extensiveness of the diarrhea nausea vomiting. We have the state agency Brill who made the determination that she was vomiting at least once every three months we have Dr. Wu who's determined that it's intermittent. Did the ALJ make a determination regarding the intensity or how often these were occurring because there were severe impairments found of vomiting so I would just interested to know did the ALJ make a determination? The ALJ looked at what the doctor said about her her conditions and the state agency reviewing physicians had reviewed records that also addressed her vomiting from Dr. Akbar who was her other gastroenterologist and again Dr. Akbar did not assess any limits that were related to this so when the ALJ assessed her condition he relied on the statements from those state agency reviewing physicians that said that she was capable of working. The doctors at the state agency said that she could do a light work capacity and that there were other occasional postural limitations and pulmonary restrictions and no severe mental impairments but the ALJ found those were somewhat persuasive and then looked at her symptoms about the statements that she made both at the hearing which were very extreme and alleged that she could not work at all because she had these symptoms all the time and then he compared that with what she told her doctors and throughout the decision he cites specific medical records where he talks about what the claimant said to her doctors and those are the kinds of articulation that we have about her symptoms and by comparing the actual statements and then the contradictory statements to her time he was able to weigh whether he should accredit a restriction and based on the fact that there were no doctors who gave any restrictions for this condition and that her symptoms occurred intermittently he limited the claimant to a sedentary work capacity in part based on her abdominal pain statements at the hearing and also based on some of the about nausea being triggered by walking around so instead of having a light work capacity which requires walking he limited her to sedentary work which does require walking. I guess my concern is when the vocational expert says she'll be fired for vomiting at work once in a 90-day period and so or twice in any month if she worked 40 hours a week or part-time and so if that's the expert did the ALJ have to in essence somehow deal with that or make an assessment as to why a functional limitation would not be needed? So that when a vocational expert makes those kinds of statements they're basing it on a functional capacity that is established by the evidence and here the functional capacity that's established by the evidence is the one that the ALJ ultimately found. The sedentary? Because it was based on actual physicians who concluded that there wasn't any basis to limit her more than what the ALJ found. So even though we have testimony by a vocational expert that hypothetically this would cause an inability to work because that hasn't actually been established in the record with an objective basis not just the claimant's testimony the ALJ was not required to credit that testimony. There are a number of issues that the claimant raised in her brief that are forfeited and we stand by that contention that the only issue before the court has to do with her excessive gastrointestinal symptoms causing work limits. So if there are no further questions I ask that the court find that the the commissioner's decision is supported by substantial evidence and ask that you affirm the decision. Thank you counsel. Anything further Ms. Young? Thank you. I just wanted to address a couple of things. It was mentioned that the doctors did not make an assessment of her functional limitations, her treating physicians. However they did note multiple times that she's having severe nausea and vomiting. It's happening multiple times a week, occasionally more than one day. They noted complaints of severely impaired quality of life and that was in August of 2020. In May of 2020 they noted still having diarrhea, unable to gain weight, will likely develop a tolerance to her medication for nausea. So they did not assess limits but they certainly elaborated on the issues that she was facing. As far as the the state agencies and the functional capacity it was mentioned that physicians concluded that there was no basis to limit her more than the ALJ had found. However the the physicians did not, they just answered questions about her functional limitations as far as how much weight she can lift and what environmental hazards she should not be susceptible or she should not be exposed to. But they did not answer questions as far as will this condition cause her to be off task more than a certain amount of time. They were answering solely functional limitation questions. So I think that's very important to to pay attention to because the ALJ came up with that on his own and the ALJ found these consultants only partially persuasive. So there was nothing else that the ALJ was relying on as far as a medical opinion goes for the residual functional capacity or for the ultimate conclusion that that Ms. Tuttweiler was not disabled. And I believe it was mentioned that there were other issues in our brief that were brought up that were not preserved. But I cited some cases in the reply brief that they were indeed preserved because we brought the overarching issue of the residual functional capacity. Do you think that's enough to just arguing we're challenging the RFC so we can bring up entirely new issues that were not addressed in the district court including the drugs, the alcohol, the tobacco, and the concentration and persistence issues? So those are not new issues. Those are issues of how the ALJ evaluated the symptoms and how the symptoms were evaluated is certainly related to whether or not those symptoms would cause off-task. But I'll also go back to your the main question that I do think it's sufficient and Arnett vs. Drew they've said that it was. So that's all I will. Thank you very much. Thank you counsel. The case is taken under advisement.